Marisol MARTINEZ CATALA, et al., Plaintiff,

v.

Hon. Maria D. GUZMAN CARDONA, et al., Defendant.

Francisca SANTIAGO SERRANO, et al., Plaintiff,

v.

Hon. Maria D. GUZMAN CARDONA, et al., Defendant.

Civil Nos. 93–1487 (JP), 93–1930 (JP).

United States District Court, D. Puerto Rico.

June 6, 1997.

As Amended June 18, 1997.

Carlos Del Valle Cruz, Lespier & Muñoz Noya, Puerta de Tierra, San Juan, PR, for Plaintiff.

José R. Gaztambide–Añeses, Gaztambide & Plaza, San Juan, PR, for Defendant.

### OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it defendants' motion for summary judgment, plaintiffs, opposition and cross-motion for summary judgment, and their respective supplements and corrections thereto (**docket Nos. 45, 49, 50, 54, 66, 68 and 74**). This is a consolidated action for damages and reinstatement in which plaintiffs allege they were demoted or discharged from their municipal government positions because of their political affiliation, in violation of their rights under the First Amendment and Due Process Clause of the Fourteenth Amendment. Plaintiffs in the first of the consolidated cases held various positions as assistants to the Mayor of the Municipality of Flórida, Puerto Rico, and plaintiffs in the second case were employees of the Elderly Community Center of the Municipality of Flórida, Puerto Rico. In early January 1993, after the elections during which defendant María Guzmán was elected Mayor of the Municipality of Flórida, plaintiffs were either demoted or fired from their positions.

All plaintiffs allege that they were discharged or demoted because of their political affiliation with the Popular Democratic Party ("PDP") and/or non-allegiance to the New Progressive Party ("NPP"), in violation of their First Amendment rights. As a second issue, plaintiffs assert that their dismissals violated their rights to due process protected by the Fourteenth Amendment. Plaintiffs admit they did not request administrative hearings to contest their dismissals. However, they contend that administrative hearings would have been futile, since the hearing officers would have been members of the NPP party and would have upheld the unconstitutional dismissals. Therefore, plaintiffs argue that their failure to request hearings should not prevent them from requesting relief.

Defendants admit that all plaintiffs were terminated or reassigned. They assert, however, that all of the employees who were assistants to the Mayor were discharged either because they held confidential positions, or because their original appointments were in violation of various provisions of the Puerto Rico Personnel Law. Therefore, they assert that the appointments were null *ab initio* and accordingly plaintiffs had no cognizable property interest in continued employment. Even if they had a property interest, defendants contend, there was no violation of their due process rights because plaintiffs did not request hearings to contest the adverse personnel actions. In the second consolidated case, defendants assert that the employees of the Elderly Center were terminated due to lack of funds, not because of any political discrimination by defendants.

Defendants moved for summary judgment on the grounds that political affiliation was an appropriate criterion for all the positions held by plaintiffs and therefore the dismissals did not violate their First Amendment rights. Secondly, defendants asserted that none of the plaintiffs, except Pedro Rivera Maldonado, who was reassigned to a career

position, had a cognizable property interest in continued employment because all were hired in violation of applicable laws and regulations. As a final argument, defendants contend they are entitled to qualified immunity because a reasonable person would not have known that dismissing plaintiffs violated their constitutional rights.

Plaintiffs oppose defendants' motion on the ground that it is not adequately supported by admissible evidence. Plaintiffs also argue that defendants' failure to produce job descriptions is fatal to their argument that political affiliation was an appropriate requirement for plaintiffs' positions. Plaintiffs contend that defendants must establish the inherent functions of a position in order to prove that political affiliation is an appropriate requirement for that position. Finally, plaintiff argue that defendants are not entitled to qualified immunity because at the time of the dismissals, it was clearly established that municipal employees could not be fired for political reasons unless political affiliation was a valid requirement for the position. Regardless, assert plaintiffs, the municipality itself cannot claim the defense of qualified immunity. With respect to the Due Process claims, plaintiffs assert that since all municipal employees in Flórida were hired in contravention of the personnel laws, employees validly expected that they would not be dismissed except in an even-handed application of the personnel laws. Plaintiffs assert that this expectation rises to the level of a cognizable property interest. Plaintiffs have cross-moved for summary judgment on their Due Process claims, asserting that a law enacted in 1991 normalized their appointments and thereby accorded them a property interest in their employment. Plaintiffs' arguments are general, and fail to incorporate the facts appearing in the plaintiffs' personnel files. Cases such as the one at bar must be decided based on each plaintiff's unique circumstances; broad arguments alone are insufficient. As a result of plaintiffs' failure to support their arguments by reference to the contents of their personnel files or other concrete evidence, the Court was required to expend substantial resources of its own in carefully reviewing these records, as they are critical evidence in this case.

## II. UNCONTESTED FACTS

The parties stipulated to certain facts during the Initial Scheduling Conference, see docket No. 28. The Court has supplemented these facts by comparing the parties' statements of contested and uncontested facts, as supported by the personnel files of the plaintiffs. The court has omitted uncontested facts proposed by defendants where such facts are not supported by information contained in the personnel files.

1. The defendant Municipality of Flórida is a unit of local government under the laws of Puerto Rico that is considered a person for purposes of the Federal Civil Rights Act, 42 U.S.C. § 1983.

2. Defendant, María D. Guzmán Cardona, was elected Mayor of the Municipality of Flórida in the general elections held on November 4, 1992. She is a well-known member of the NPP and ran on the NPP ticket.

3. Defendant María L. González is the Personnel Director of the Municipality of Flórida.

4. All plaintiffs were dismissed during the month of January 1993. Further, none of the plaintiffs availed himself of informal or formal administrative procedures for grievance hearings.

5. The parties do not dispute the personnel histories of the individual plaintiffs who worked as assistants to the Mayor in Civil Case No. 93–1487(JP).

a. Marisol Martínez Cátala

Ms. Martínez Cátala started working for the Municipality of Flórida on March 1, 1985, as the Municipal Assembly Secretary, a trust position. On June 11, 1992, Ms. Martínez Cátala received a letter from then Mayor de León, offering her the position of Administrative Aide, with career status and an increase in salary. Ms. Martínez Cátala accepted the position on June 18, 1992, and began working as an Administrative Aide to the Mayor on July 1, 1992.

b. Nitza Vázquez Maldonado

Ms. Vázquez Maldonado began working for the Municipality of Flórida on January 26,

1986, as a Filing Clerk, a career position, with probationary status. On January 30, 1989, Ms. Vázquez Maldonado was offered the position of Secretary to the Mayor. On April 3, 1989, she was promoted to this confidential position, with an increase in salary.

#### c. Nydia Díaz Cortez

Ms. Díaz Cortez began working for the Municipality of Flórida on October 15, 1983, with a probationary status as an Activities Coordinator. On February 1, 1989, she was promoted to Public Relations Officer, a trust position.

#### d. Miguel Cintrón Maldonado

Mr. Cintrón Maldonado began working for the Municipality in 1985 as a driver for the Department of Public Works. He was reclassified as an MPL Driver with an increase in salary on September 1, 1985. On September 3, 1985, he was appointed Director of the Sports and Recreation Department. On July 7, 1989, he resigned from his position as Director of the Sports and Recreation Department, effective July 10, 1989. In November of 1989, he returned to a position as Administrative Aide in the Municipal Graveyard with permanent status as a career employee, without complying with the personnel laws. On September 1, 1991, Cintrón Maldonado was promoted to Director of Sports and Recreation Department, a trust position. He became Director of the Civil Defense Department on February 1, 1992, also a trust position.

#### e. Rosa Cardona de Jesús

Ms. Cardona de Jesús began working for the Municipality as an Administrator in the Municipal Dispensary on January 15, 1985, a trust position. Thereafter, on September 3, 1985, she was reclassified as an Administrative Aide, although she continued to work in the same place and continued to perform the same duties and functions. During 1989, the Municipal Dispensary became a Commonwealth Department of Health facility.

#### f. Pedro Rivera Maldonado

Mr. Rivera Maldonado started working in the Finance Division in January of 1973, as a Bookkeeping Secretary. During 1984–1985, plaintiff left his position as Bookkeeping Secretary and became Bookkeeping Official, a permanent career position. He became Director of Finance, a confidential position, in 1988. Like the others, Mr. Rivera Maldonado was discharged during January 1993, but he was reassigned to his career position as an Accounting Official.

#### g. Héctor de León Vélez

Starting on July 2, 1991, Mr. de León Vélez began working for the Municipality as a Maintenance Employee. By August 1, 1991, he was promoted to Sub–Director of Public Works Department, with a probationary status. On November 1, 1991, he was given a permanent, regular status as Sub–Director of Public Works. Then, on February 1, 1992, he became Director of Public Works, a confidential position.

#### h. Eusgardo Escribano Acevedo

Mr. Escribano Acevedo started working for the Municipality during July 1992, as an Office Helper, or Clerk. By October 12, 1992, he had obtained regular, permanent career status, while the electoral stay was in place.

6. With respect to Civil Case No. 93–1930(JP), the parties do not dispute the personnel histories of the individuals who worked at the Elderly Center:

#### a. Francisca Serrano Santiago

Ms. Serrano Santiago began working for the Municipality on January 1, 1986, as the Director of the Elderly Center, a trust position.

#### b. Blanca Berríos

Ms. Berríos began working for the Municipality on September 16, 1991 as a social services technician of the Elderly Center.

#### c. Efraín Marrero Santiago

Mr. Marrero Santiago began working for the Municipality on August 8, 1988 as a security guard of the Elderly Center, with probationary status. Marrero Santiago's sal-

ary was increased in November of 1988 and 1989.

#### d. Aida Mendoza Mercado

Ms. Mendoza Mercado began working for the Municipality at the Elderly Center on January 1, 1986, as an administrative assistant. No status was indicated for this appointment. On November 1, 1989, her salary was increased.

#### e. María Virgen Perales Marrero

Ms. Perales Marrero began working on August 1, 1990 as an activities coordinator of the Elderly Center. Her appointment was effective until September 30, 1990.

#### f. Andrés Concepción Suárez

Mr. Concepción Suárez began working for the Municipality at the Elderly Center on July 1, 1988, as a security guard with regular status.

7. Employees of the Elderly Center depended on funds obtained through grants from "SENDEC." On January 14, 1993, the funds from SENDEC had not been approved. On January 15, 1993, plaintiffs were dismissed.

### III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Libertad v. Welch*, 53 F.3d 428, 433 (1st Cir.1995); *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995), *cert. denied*, 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995).

Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of mate-

rial fact exists. *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987). A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Mack v. Great Atl. and Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A material fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack*, 871 F.2d at 181.

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the Court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence [necessary] to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975); *see also Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989). The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed.R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

### IV. PLAINTIFFS' FIRST AMENDMENT CLAIMS

To establish a prima facie case of political discrimination for a patronage dismissal violative of the free association rights protected by the First Amendment, plaintiffs must show that their affiliation with the PDP was the substantial or motivating factor underlying their dismissals or demotions. *Ferrer v. Zayas*, 914 F.2d 309, 311 (1st Cir. 1990). *Jirau–Bernal v. Agrait*, 37 F.3d 1, 3 (1st Cir.1994). Plaintiffs bear the initial burden of demonstrating that political affiliation was the motivating factor for the defendants'

decision to dismiss them; circumstantial evidence may be sufficient to support this contention. *Estrada–Izquierdo v. Aponte–Roque,* 850 F.2d 10, 14 (1st Cir.1988). If there is sufficient competent evidence that political affiliation motivated the dismissal, then the burden shifts to defendants to establish either the dismissal was not due to discriminatory reasons, *see Ferrer v. Zayas,* 914 F.2d 309, 311 (1st Cir.1990), or that the plaintiff held a position for which party affiliation was a proper credential for continued employment, *see Branti,* 445 U.S. at 518, 100 S.Ct. at 1294–95; *De Choudens v. Government Dev. Bank of P.R.,* 801 F.2d 5, 8 (1st. Cir. 1986), *cert. denied,* 481 U.S. 1013, 107 S.Ct. 1886, 95 L.Ed.2d 494 (1987).

■ Defendants have moved for summary judgment on the ground that the plaintiffs occupied positions that fall within the *Branti–Elrod* exception to patronage dismissals. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). According to the *Branti–Elrod* exception, public employees may be fired because of their political beliefs without violating their First Amendment rights if political affiliation is an appropriate criterion for the effective performance of the positions they hold. The threshold inquiry in determining whether political affiliation is an appropriate requirement for a particular position is whether the position relates to partisan political interests or concerns. If this first inquiry is satisfied, the next step is to examine the particular responsibilities of the position to determine whether it resembles a policy-maker, a privy to confidential information, a communicator, or some other office holder whose function is such that party loyalty is an equally appropriate requirement. *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241–42 (1st Cir.1986) *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). To determine whether a particular position relates to partisan political concerns, the Court looks at the agency's statutory mission and whether the position is in an agency involving government decision-making on issues where there is room for political disagreement on goals or their implementation. *Collazo Rivera v. Torres Gaz-*

*tambide,* 812 F.2d 258, 260–61 (1st Cir.1987). With respect to the second prong of the two-step inquiry, the substance of the assigned duties, rather than overbroad labels like "confidential" or "policy-making", determines whether a government position is one for which political affiliation is an appropriate requirement. *Ortiz–Pinero v. Rivera–Arroyo,* 84 F.3d 7, 14–16 (1st Cir.1996), (citing *Branti,* 445 U.S. at 518, 100 S.Ct. at 1294–95). *See also Romero Feliciano v. Torres Gaztambide,* 836 F.2d 1, 3 (1st Cir.1987).

Plaintiffs do not dispute that under the first prong the Municipality of Flórida is a governmental arm involved in policy-making decisions. The parties dispute, however, the analysis under the second prong involving what were the inherent powers and responsibilities of the individual positions within the agency. *Mendez–Palou v. Rohena–Betancourt,* 813 F.2d 1255, 1258 (1st Cir.1987). In analyzing the second prong, it is necessary to discuss the individual characteristics of the employment positions in question. Although courts generally rely upon the OP–16 as a concise, detailed account of the inherent powers and responsibilities of the job description, the OP–16 is not the only relevant evidence describing the duties of an individual position. *Mendez–Palou,* 813 F.2d at 1260. Moreover, the absence of written, signed job descriptions is not dispositive. *Ortiz–Pinero,* 84 F.3d at 18.

■ Plaintiffs in the case at bar fall into three groups for purposes of the *Branti–Elrod* exception to the First Amendment bar on patronage dismissals. In the first group are those individuals who occupied confidential positions, generally heading municipal departments, at the time of their dismissals: Héctor de León Vélez, Director of Public Works; Miguel Cintrón Maldonado, Director of the Civil Defense Department; Pedro Rivera Maldonado, Director of Finance; Nitza Vázquez Maldonado, Municipal Secretary; and Francisca Serrano Santiago, Director of the Elderly Center. In the second group are those who held clerical or non-technical positions: Eusgardo Escribano Acevedo, Office Clerk; Efraín Marrero Santiago, Elderly Center Security Guard; and Andrés Concep-

ción Suárez, Elderly Center Security Guard. The third group is comprised of those individuals who were not department heads but yet whose responsibilities were more than clerical/non-technical: Marísol Martínez Cátala, Administrative Aide to the Mayor; Nydia Díaz Cortez, Public Relations Technician; Rosa Cardona de Jesús, Administrative Aide; Blanca Berríos, Social Services Technician; Aida Mendoza Mercado, Administrative Assistant of the Elderly Center; and María Virgen Perales Marrero, Activities Coordinator of the Elderly Center.

At the time of plaintiffs' dismissals, it was clearly established that political affiliation was an appropriate requirement for the heads of municipal departments. *See Cordero v. De Jesus–Mendez*, 867 F.2d 1, 12–13 (1st Cir.1989) (Director of Civil Defense and Director of Finance for the Municipality of Moca); *Ortiz–Pinero v. Rivera Acevedo*, 900 F.Supp. 574 (D.P.R.1995) (Director of Office of Federal Funds for the Municipality of Gurabo) *aff'd*, 84 F.3d 7 (1st Cir.1996). Likewise, political affiliation was an appropriate requirement for Nitza Vázquez Maldonado's position since the Mayor's secretary is privy to confidential information. Therefore, defendants' decision to terminate Héctor de León Vélez, Director of Public Works; Miguel Cintrón Maldonado, Director of the Civil Defense Department; Pedro Rivera Maldonado, Director of Finance; and Nitza Vázquez Maldonado, Municipal Secretary, clearly did not violate their First Amendment rights and defendants are entitled to judgment as a matter of law with respect to the First Amendment claims of these individuals. Accordingly, the Court hereby **DISMISSES** the First Amendment claims of Héctor de León Vélez, Miguel Cintrón Maldonado, Pedro Rivera Maldonado, and Nitza Vázquez Maldonado.

█ Although Francisca Santiago Serrano was the head of the Elderly Center, it is not clear whether she reported directly to the Mayor or was subordinate to some municipal department. Defendants have not submitted evidence regarding the duties performed by the Director of the Elderly Center. Therefore, the Court cannot determine whether party loyalty is an appropriate requirement for this position. Accordingly, the Court hereby **DENIES** defendants' motion for summary judgment as it relates to the First Amendment claims of Francisca Serrano Santiago.

█ In contrast, a reasonable government official would have known that political affiliation was not a proper criterion for the effective performance of the positions of office clerk and security guard, and therefore dismissal of persons in these positions because of their political affiliation would clearly violate the employees' First Amendment rights. *Vazquez Rios v. Hernandez Colon*, 819 F.2d 319 (1st Cir.1987) (cleaning women, waiters, and supervisor of domestic services at governor's executive mansion could not be dismissed on the basis of political affiliation); *Cordero*, 867 F.2d at 1 (administrative aide and assistant director of public works, cleaning supervisor, internal auditor could not be dismissed on the basis of political affiliation). Therefore, defendants' motion for summary judgment is **DENIED** as it relates to plaintiffs Eusgardo Escribano Acevedo, Efraín Marrero Santiago, and Andrés Concepción Suárez.

█ It is less obvious whether political affiliation was an appropriate criterion for performance of the positions held by persons in the third group. Partly because of this ambiguity, defendants argue that they are entitled to qualified immunity. The doctrine of qualified immunity protects state officials in the performance of their duties from undue interference and from threats of liability. *Elder v. Holloway*, 510 U.S. 510, 513–15, 114 S.Ct. 1019, 1022, 127 L.Ed.2d 344 (1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2731–32, 73 L.Ed.2d 396 (1982)). Defendants who are government employees are individually shielded from claims seeking civil damages for injuries caused by actions taken within the defendant employees' discretionary authority, unless their conduct "violates clearly established statutory or constitutional rights of which a reasonable person would have been aware." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Municipalities, however, are not entitled to qualified immunity. *Cordero v. De Jesus–Mendez*, 867 F.2d 1, 10 (1st Cir.1989). In

political discrimination cases involving claims of First Amendment violations, the relevant inquiry is "whether [at the time of dismissal] it was clearly established that employees in the particular positions at issue, in light of the responsibilities inherent in those positions, were protected from patronage dismissal." *Mendez–Palou v. Rohena Betancourt,* 813 F.2d 1255, 1259 (1st Cir.1987).

Defendants argue that they could reasonably have believed, based on the duties inherent in the positions held by plaintiffs in the third group, that political affiliation was an appropriate criterion. *See Vazquez Rios,* 819 F.2d 319 (qualified immunity granted with regards to patronage dismissal of editing assistant and executive secretary in Governor's Office of Cultural Affairs because it was not clearly established that political affiliation was not a valid criterion). The job titles of plaintiffs in the third group do not clearly indicate the inherent powers of these positions.

■ The personnel file of Rosa Cardona de Jesús contains a job description for Hospital Administrator. According to the description, this is a professional and executive position that requires application of knowledge regarding the principles and practices for the administration of the Diagnostic and Treatment Center. The incumbent is responsible for coordinating, directing and supervising the administrative activities of the Center, including establishing norms, methods and procedures that comply with laws and regulations established by the Department of Health. The incumbent works under the direct supervision of the Mayor, participating in the formulation and implementation of public policy relating to her functional area and advises the Mayor with respect to the Diagnostic and Treatment Center.

In her deposition, Cardona de Jesús indicated that she began working in the Municipal Dispensary, where she was required to be alert to the activities of a group of nurses, drivers, and concierges. Her responsibilities there included ensuring that these persons clocked in, and preparing the rotations for the nurses. The dispensary closed around July of 1988 and she was transferred to the position of Administrative Aide in the Diag-

nostic and Treatment Center, under the Department of Health. Her duties there were similar but broader than at the dispensary since the Center was a larger operation. Based on this information, which has not been specifically disputed by the plaintiffs, the Court finds that it was not clearly established at the time of her dismissal that Cardona de Jesús was protected from patronage dismissal. Therefore, the individual defendants are entitled to qualified immunity. Accordingly, the Court hereby **GRANTS** defendants' motion for summary judgment with respect to the First Amendment claims of Rosa Cardona de Jesús against the individual defendants in their personal capacities. Her First Amendment claim against the Municipality shall proceed to trial.

■ Nydia Díaz Cortez held the position of Public Relations Officer. As stated in *Branti:* "[An elected head of government] may appropriately believe that the official duties of various assistants who help him write speeches, explain his views to the press, or communicate with the legislature cannot be performed effectively unless those persons share his political beliefs and party commitments." 445 U.S. at 518, 100 S.Ct. at 1295. Although it is unclear whether Díaz Cortez' position was classified as career or confidential, this label is not dispositive. The Court finds as a matter of law that political affiliation was an appropriate requirement for the position of Public Relations Officer and hereby **GRANTS** defendants' motion for summary judgment with respect to the First Amendment claim of Nydia Díaz Cortez.

■ Neither plaintiffs nor defendants have presented evidence regarding the inherent powers of the positions held by Marísol Martínez Cátala, Administrative Assistant; Blanca Berríos, Activities Director at the Elderly Center; Aida Mendoza Mercado, Administrative Assistant at the Elderly Center; and María Virgen Perales Marrero, Activities Coordinator at the Elderly Center. Defendants have presented the personnel file of every plaintiff and portions of their depositions. However, nowhere is there an official description of the responsibilities for the positions held by these plaintiffs that would

652

allow this Court to determine whether political affiliation was an appropriate requirement for these positions.

█ Defendants assert an alternate ground for granting summary judgment in their favor. They contend that the Elderly Center was closed down due to a lack of sufficient funds. See Exhibit 67, Termination of Employment notice letter to Mrs. Aida Mendoza Mercado. Defendants assert that this is a legitimate, non-discriminatory reason which supports their employment action in dismissing the Elderly Center employees. Plaintiffs contend that the lack of sufficient funds is mere pretext for political discrimination. As support for this contention, they present evidence that funds were received from the federal government, dedicated to this particular purpose, and that although the elderly center closed, it reopened after a short time period staffed by individuals who were members of the NPP. Deposition of Mayor María D. Guzmán Cardona at 161–63, 169–73, 180–81, see docket No. 68. This evidence is sufficient to generate a question of material fact as to whether defendants' employment actions were non-discriminatory, or merely a pretext for political discrimination. Accordingly, the Court hereby **DENIES** defendants' motion for summary judgment with respect to the First Amendment claims of plaintiffs Marísol Martínez Cátala, Blanca Berríos, Aida Mendoza Mercado, and María Virgen Perales Marrero.

## V. FOURTEENTH AMENDMENT CLAIMS

The Due Process Clause of the Fourteenth Amendment guarantees the right to an informal hearing before the termination of a property interest. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). A property interest in continued public employment is created by "existing rules or understandings that stem from an independent source such as state law." *Id.,* 470 U.S. at 538, 105 S.Ct. at 1491. Whether a property interest exists depends upon whether it was objectively reasonable for the employee to believe, based upon either statute or employment contract, that he could rely on continued employment.

*Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

█ Once is determined that a plaintiff has a protected property interest, the relevant inquiry is whether the procedure employed to deprive her of her job complied with the requirements of due process. *Acosta–Sepulveda v. Hernandez–Purcell,* 889 F.2d 9, 12 (1st Cir.1989). Before a tenured public employee is discharged, she is entitled to oral or written notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story. *Id.* at 12 (citing *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495). The informal hearing need not be conducted before an impartial decision-maker, and may in fact be presided over by the employer himself. *Id.*

It is important to keep in mind that U.S. district courts do not serve as courts of first instance for municipal employees who believe they have been erroneously terminated from their employment. In the interest of federalism, U.S. district courts should not interfere with the personnel decisions of a municipality unless they implicate constitutional concerns. In other words, the role of the federal courts is not to ensure that the employer reached the correct result in dismissing a particular plaintiff, but to ensure that the plaintiff has had a meaningful opportunity to invoke the discretion of the decision-maker. *See Loudermill,* 470 U.S. at 543, 105 S.Ct. at 1493–94, and *Acosta–Sepulveda,* 889 F.2d at 12 ("It is not our task to review the correctness of the staff attorney's decision. The alleged procedural fault cannot be the examiner's failure to reach the right result. Such a holding would turn any procedural due process claim into a full judicial review of discretionary administrative decisions"). Plaintiffs unhappy with a decision reached after being accorded due process should seek remedies afforded by administrative and state law channels. *See Feliciano–Angulo v. Rivera–Cruz,* 858 F.2d 40, 44 n. 4 (1st Cir.1988) (to extent plaintiff challenges substance of employer's decision to dismiss him, plaintiff alleges a violation of state law).

The Puerto Rico Public Service Personnel Act, P.R. Laws Ann. tit. 3, § 1301–1411

(1992), divides government employees into two service categories, career and confidential. P.R. Laws Ann. tit. 3, § 1349 (1992). Confidential employees are "those who intervene or collaborate substantially in the formulation of public policy, who advise directly or render direct services to the head of the agency...." P.R. Laws Ann. tit. 3, § 1350 (1992). These employees are "of free selection and removal." P.R. Laws Ann. tit. 3, § 1350 (1992). In contrast, career employees are those who enter the civil service system after following the procedures established for competition based on merit, P.R. Laws Ann. tit. 3, § 1352 (1992), and may only be dismissed for "good cause, after preferment of charges in writing." P.R. Laws Ann. tit. 3, § 1336(4) (1992). The Act provides that career employees promoted to confidential positions have a right to be reinstated to positions equal or similar to the last ones held in career service upon termination from the confidential positions. P.R. Laws Ann. tit. 3, § 1350 (1992); see also Cordero, 867 F.2d at 12–13.

In Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169 (1st Cir.1988), the First Circuit held that employees hired in contravention of the Commonwealth's laws have no cognizable property interest in continued employment. Plaintiffs in that case argued that since they had been hired for career positions and worked under such status for some time, they developed a legitimate expectation of permanent employment that could not be rendered null and void through a mistake in the recruiting process. The Court of Appeals agreed with the district court's conclusion that under Puerto Rico law any property right associated with a career position is rendered null and void if the position is filled in violation of the Personnel Act. Id. at 1173. The Court of Appeals reasoned that to the extent that the plaintiffs were hired in violation of applicable regulations, they could not, upon termination, benefit from the "property" status of their positions. Id. at 1174.

However, the Kauffman rule must now be applied in light of Law No. 81 of August 30, 1991, commonly known as the Autonomous Municipalities Act. P.R. Laws Ann. tit. 21, § 4575 (1995). This legislation was enacted by the PDP when it feared defeat in the 1992 elections. Law No. 81 was designed to grant municipalities more fiscal autonomy and greater responsibilities for the provision of services. See Statement of Motives, 1991 P.R. Laws 459. It contained a grandfather clause that normalized the appointments of public employees who had never competed for their positions based on merit, thereby giving them a "golden parachute" should they be fired by the incoming administration. Article 12.025 of Law 81 provides:

Employees who are performing permanent functions in the municipality which correspond to the career service on [August 30, 1991], shall acquire regular career status.

Employees who are performing transitory or fixed duration functions in the municipality which correspond to the career service on [August 30, 1991] shall acquire transitory status.

Employees under contract who have performed their functions for a period of less than ninety (90) days, shall continue to work under contract until they complete the ninety (90)-day term.

Employees who are performing permanent functions in the municipality corresponding to the confidential service on [August 30, 1991], shall acquire confidential status.

Employees of the Municipal Assembly who are performing permanent functions corresponding to the career service on [August 30, 1991], shall occupy confidential positions in said Legislative Body, but upon separation from the confidential service shall have an absolute right to be reinstated in a position equal or similar to the last one they held in the career service in any municipal dependency.

Employees shall retain all vested rights according to all applicable laws, norms, and regulations, provided they are compatible with the provisions of this subtitle.

P.R. Laws Ann. tit. 21, § 4575 (1995).

Law No. 84 of October 29, 1992, amended the first paragraph of Article 12.025 to read: "Employees who are occupying permanent career positions in the municipality on the effective date of this Act, shall retain regular

career status." The statement of motives introducing this amendment does not clearly indicate what the change in wording was intended to accomplish. However, in *Municipio de Guánica v. Wanda Lugo Robles,* No. JAC–93–0580 (Tribunal General de Justicia, Unidad Especial de Jueces de Apelaciones, Tribunal Superior de Puerto Rico, Apr. 29, 1994) (see attachment to docket No. 66), the court deferred to the construction given by the Appeals Board of the Personnel Administration System, which was that the amendment did not abrogate the rights accorded municipal employees by Article 12.025 of Law 81, but rather that the legislature's intent was to cover situations in which an employee was occupying one position in a municipality but performing the functions of another position. The Appeals Board held that the amendment was designed to allow such employees to acquire regular, career status in the positions they occupied. According to the court's opinion in *Municipio de Guánica,* the Supreme Court of Puerto Rico has thus far declined to review the Appeal Board's construction of Article 12.025.

Plaintiffs contend that this amendment also changed the effective date of the Act to October 29, 1992, the date of enactment of the amendment. This Court disagrees with this construction of the statute. The amendment modifies the wording of the first paragraph of Article 12.025. However the effective date is still that of "this Act." The date of enactment of the Autonomous Municipalities Act, as opposed to the date of enactment of the amendments, was August 30, 1991. Accordingly, we read the first paragraph, as amended, to read: "Employees who are occupying permanent career positions in the municipality on August 30, 1991, shall retain regular career status."

 It is undisputed that the following individuals held confidential positions: Héctor de León Vélez, Director of Public Works; Miguel Cintrón Maldonado, Director of the Civil Defense Department; Pedro Rivera Maldonado, Director of Finance; Nitza Vázquez Maldonado, Municipal Secretary; and Francisca Serrano Santiago, Director of the Elderly Center. As confidential employees, these individuals could be dismissed at any time. Thus, they did not have a property interest in their continued employment in their confidential positions which would entitle them to a pre-termination hearing. Plaintiffs argue, however, that the individuals who held confidential positions were entitled to be reinstated in career positions pursuant to the Personnel Law of Puerto Rico.

Hector de León Vélez was working as a Subdirector of Public Works on August 1, 1991. Therefore, he acquired career status by virtue of the grandfather provision of Public Law No. 81 of August 30, 1991, and hence was entitled to be reinstated in a position equal or similar to the last one held in career service upon termination of his confidential position. P.R. Laws Ann. tit. 3, § 1350 (1992). Thus, he had a property interest. However, this does not end the inquiry. The Court must next ask whether he was accorded due process before being deprived of this property interest. His personnel file contains a letter dated January 19, 1993, from defendant Guzmán Cardona, Mayor of Flórida, notifying him of his termination. The letter recounts de León Veléz's employment history with the Municipality and concludes that since evidence in his personnel file indicated he was not appointed to a career position in accordance with applicable regulations, he did not acquire career status and therefore was not entitled to be reinstated to a career position upon termination of his confidential appointment. The letter does not indicate whether de León Velez had the right to respond to these charges before being dismissed. Under *Loudermill,* the essential due process requirements owed a tenured public employee are notice of the charges against him, an explanation of the employer's evidence, and the opportunity to respond. *Acosta–Sepulveda v. Hernandez–Purcell,* 889 F.2d 9, 12 (1st Cir.1989). There is no other evidence to indicate whether the Municipality provided de León Vélez with the opportunity to respond to these charges. Therefore, the Court cannot dispose of this claim by summary judgment at this time. The Court will hold both parties' motions for summary judgment with respect to de León Vélez' due process claim in abeyance until it can hear

evidence regarding whether he was accorded due process.

■ Miguel Cintrón Maldonado began working for the Municipality in 1985. He occupied various positions until he left government service in 1989. He returned in November of 1989, as an Administrative Aide in the Municipal Graveyard with permanent status as a career employee, although his appointment did not comply with the personnel laws. He was promoted to Director of the Sports and Recreation Department, a confidential position, on September 1, 1991. He became Director of the Civil Defense Department on February 1, 1992, also a confidential position. However, since he was occupying a permanent career position in the municipality on August 30, 1991, he acquired regular career status and was entitled to be assigned to a career position equal or similar to his position as Administrative Aide in the Municipal Graveyard upon termination of his confidential position. Although plaintiffs have shown that he had a property interest in his previous career position, they have failed to show that Cintrón Maldonado was deprived of this property interest without due process of law. His personnel file does not contain a copy of his termination letter, although he acknowledges in his deposition that he received one. Therefore, there is a dispute of material fact whether the procedures followed by defendants in terminating Cintrón Maldonado complied with due process. Therefore, the Court cannot dispose of this claim by summary judgment at this time. The Court will hold both parties' motions for summary judgment with respect to Cintrón Maldonado's due process claim in abeyance until it can hear evidence regarding whether he was accorded due process.

■ Defendants concede that Pedro Rivera Maldonado acquired career status in accordance with Commonwealth personnel regulations while working in the Finance Department, see docket No. 50, and they claim in their motion for summary judgment that they complied with P.R. Laws Ann. tit. 3, § 1350 (1992) by reassigning him to a career position. However, plaintiffs allege in the complaint that he was not assigned a desk or a phone and was required to sit in a folding chair all day long without being assigned any significant functions. Federal courts have recognized that a constructive discharge may constitute a taking of property and therefore require due process. *See, e.g., Parrett v. City of Connersville, Ind.,* 737 F.2d 690 (7th Cir.1984); *Meyers v. City of Cincinnati,* 934 F.2d 726 (6th Cir.1991); *Reussow v. Eddington,* 483 F.Supp. 739 (D.C.Colo.1980). However, whether Rivera Maldonado was constructively fired is a question for the jury. Therefore, the Court hereby **DENIES** both defendants' and plaintiffs' motions for summary judgment with respect to the Fourteenth Amendment claim of Pedro Rivera Maldonado.

■ Nitza Vázquez Maldonado began her career with the Municipality of Flórida as a filing clerk in 1986. However, she was not recruited in accordance with applicable personnel regulations and therefore, under *Kauffman,* has no cognizable property interest in continued employment. Moreover, she was promoted to the position of Municipal Secretary, a confidential position, on April 3, 1989. Since she was occupying that position on August 30, 1991, she acquired confidential status by virtue of Article 12.025 of Law 81 and was subject to free removal. Therefore, the Court hereby **GRANTS** defendants' motion for summary judgment and **DENIES** plaintiffs' cross motion for summary judgment with respect to the Fourteenth Amendment claim of Nitza Vázquez Maldonado.

■ Francisca Serrano Santiago began working for the Municipality of Flórida on January 1, 1986, as the Director of the Elderly Center, a confidential position. Even if not hired in accordance with applicable personnel regulations, Serrano Santiago acquired confidential status by operation of Article 12.025 of Law 81. This benefits her little, however, since confidential employees are "of free selection and removal." P.R. Laws Ann. tit. 3, § 1350 (1992). Therefore, commonwealth law creates no cognizable property interest in her continued employment as the Director of the Elderly Center. Accordingly, the Court hereby **GRANTS** defendants' motion for summary judgment and **DENIES** plaintiffs' cross motion for sum-

mary judgment with respect to the Fourteenth Amendment claim of Francisca Serrano Santiago.

 It is undisputed that Efraín Marrero Santiago (Elderly Center security guard) and Andrés Concepción Suárez (Elderly Center security guard) were not recruited in compliance with the appropriate regulations. However, Andrés Concepción Suárez and Efraín Marrero Santiago began working as security guards for the Elderly Center on July 1 and August 8, 1988, respectively. Since both successfully completed any probationary period, they acquired regular, career status by virtue of Article 12.025 of Law 81. Thus, they had a property interest in their respective positions and could only be dismissed after being accorded due process.

We next look to determine whether the dismissal complied with due process requirements. The personnel files of Marrero Santiago and Concepción Suárez contain identical letters dated January 15, 1993. The letters indicate that the funds for the Elderly Center had not been approved and therefore defendant Guzmán Cardona was obligated to relieve plaintiffs of their duties. The letter also advised Marrero Santiago and Concepción Suárez that if they understood that they had acquired career status, they could request an administrative hearing with the Director of Personnel to submit their evidence. They were also advised that they had the right to file an appeal with the Appeals Board of the Personnel Administration System within 30 calendar days of receipt of the letter. It appears from these facts that plaintiffs may have been afforded all the process they were due under the circumstances. However, defendants only moved for summary judgment on the ground that plaintiffs did not have a cognizable property interest, not that they were accorded due process. And plaintiffs have not had the opportunity to brief the latter issue. Therefore, the Court cannot grant summary judgment to the defendants at this time. The Court will hold both parties' motions for summary judgment with respect to the due process claims of Marrero Santiago and Concepción Suárez in abeyance until it can hear evidence regarding whether they were accorded due process.

 The parties do not dispute that Escribano Acevedo was not hired in accordance with applicable regulations. Furthermore, according to the uncontested documents in his personnel file, Escribano Acevedo began working as an office clerk on July 1, 1992. Therefore, Escribano Acevedo did not obtain permanent career status by virtue of the grandfather clause in Law 81. Since he was appointed to his position without complying with applicable regulations, any property interest in this position was rendered void.

Plaintiffs argue that Escribano Acevedo nonetheless enjoyed a property interest in his position because all municipal employees were hired in contravention of the Personnel Act and therefore he expected to continue in his position unless all illegally appointed employees were dismissed in an even-handed manner. As support for this argument, plaintiffs note that defendant María de Guzmán conceded in her deposition (see attachments to dockets 54 and 68) that possibly none of the 220 municipal employees in Flórida were hired in accordance with personnel regulations, that one could say that the entire municipality was appointed illegally, and yet the only employees fired because of illegal appointments were the plaintiffs in these consolidated cases. Deposition of the Honorable María de Guzmán at 68–69, 83. Plaintiffs cite this Court's decision in *Marin Piazza v. Aponte Roque,* 668 F.Supp. 63 (D.P.R. 1987), and argue that this is evidence that the Personnel Act was routinely ignored and therefore Escribano Acevedo shared with defendants a "mutually explicit understanding" that he would enjoy permanency in his position and would not be treated differently from other illegally-hired career civil servants. Plaintiffs claim that this "mutually explicit understanding" rises to the level of a cognizable property interest.

The case at bar is distinguishable from *Marin Piazza.* In that case, defendants had specifically told plaintiffs—teacher's aides hired under contract—that their contracts would automatically be renewed the following year if their work was satisfactory. The defendants initially fulfilled this promise by

automatically renewing the contracts after the first year. The Court held that these representations, plus the initial automatic renewal, were sufficient to instill in plaintiffs an expectancy of continued employment. *Id.* at 67. In the case at bar, in contrast, plaintiffs do not point to any affirmative representations by defendants that would have led Escribano Acevedo to believe he enjoyed permanency in his position. Although he may have "understood" that he enjoyed such permanency, there is no evidence that this understanding was explicit or mutual. Rather, Escribano Acevedo had a mere subjective expectancy of continued employment which did not rise to the level of a constitutionally cognizable property interest. *See Marin Piazza*, 668 F.Supp. at 67. Therefore, the Court hereby **GRANTS** defendants' motion for summary judgment and **DENIES** plaintiffs' cross-motion for summary judgment with respect to the Fourteenth Amendment claim of Eusgardo Escribano Acevedo.[1]

■ According to a Change Report (OCAP-15) in her personnel file, Marísol Martínez Cátala worked in a confidential position as Secretary of the Municipal Assembly until July 1, 1992, which she accepted a position as an Administrative Aide, with career status and an increase in salary. Like Nitza Vázquez Maldonado and Francisca Serrano Santiago, she acquired confidential status as a result of Article 12.025 of Law 81 while working as Secretary of the Municipal Assembly because that was the classification of the position she occupied on August 30, 1991. However, this does not further her Fourteenth Amendment claim since confidential employees are of free selection and removal. P.R. Laws Ann. tit. 3, § 1350 (1992).

According to Martínez Cátala's deposition, and based on the contents of her personnel file, she was not hired to the Administrative Aide position in accordance with applicable regulations. Therefore, under *Kauffman*, any property right associated with this career position is rendered null and void. Plaintiffs argue that she nonetheless enjoyed a property interest in her position because all municipal employees were hired in contravention of the Personnel Act and therefore she expected to continue in his position unless all illegally appointed employees were dismissed in an even-handed manner. We reject this argument for the reasons stated in connection with the claim of Escribano Acevedo. Accordingly, the Court hereby **GRANTS** defendants' motion for summary judgment and **DENIES** plaintiffs' cross-motion for summary judgment with respect to the Fourteenth Amendment claim of Marísol Martínez Cátala.

■ According to the Notification of Appointment and Oath of Office (OCAP-11) in her personnel file, Nydia Díaz Cortez began working for the Municipality on October 15, 1983, as an Activities Coordinator, with career status. The file also contains another OCAP-11 indicating she was appointed to the position of Public Relations Officer effective October 15, 1985, with a probationary status. Various Change Reports (OCAP-15), ranging in date from 1986 to November of 1989, indicate that she was employed as a Public Relations Officer with "regular" status. The file also contains two letters from the Honorable Juan R. de León Vélez, dated October 15, 1985, and January 30, 1989, nominating her as Public Relations Officer. The 1985 letter does not indicate the status of the position but the 1989 letter states the position is confidential. Based on this letter and the fact that public relations positions entail duties often considered confidential, the individual defendants could reasonably have believed that their dismissal of Díaz Cortez did not violate her due process rights. (Defen-

---

1. Escribano Acevedo's personnel file contains a letter from defendant María Guzmán Cardona dated January 15, 1993, in which she stated she proposed to terminate him because he did not compete for his career position, that he was granted regular status when the election stay was in place, and that he was not qualified for the career position for which he was initially hired. The Mayor indicated that before proceeding with her intended course of action, she was offering him the opportunity for an informal hearing with the Director of Personnel in which he could present any evidence and arguments contradicting her findings. Escribano Acevedo was granted a period of 15 days from receipt of the Mayor's letter in which to request the hearing. He was further advised that the failure to bring forth evidence and arguments would result in his dismissal. This letter comports with the dictates of due process.

dants apparently did believe that Díaz Cortez's position was confidential since the letter from defendant Guzmán Cardona, dated January 14, 1993, describes it as such.) They are therefore shielded by the doctrine of qualified immunity. Accordingly, the individual defendants' motion for summary judgment with respect to the Fourteenth Amendment claim of Díaz Cortez is hereby **GRANTED.** The Municipality, however, is not entitled to qualified immunity. As there is a genuine dispute as to whether Díaz Cortez' position was career or confidential, and, if it was career, whether she was accorded due process, Díaz Cortez's Fourteenth Amendment claim against the Municipality of Flórida shall proceed to trial.

Rosa Cardona de Jesús began her career as Administrator of the Municipal Dispensary, a confidential position. However, this position was reclassified to regular career status in September of 1985. She successfully completed any probationary period and acquired regular career status by virtue of Article 12.025 of Law 81 since she was occupying this position on August 30, 1991. Therefore, the Court hereby **DENIES** defendants' motion for summary judgment with respect to the Fourteenth Amendment claim of Cardona de Jesús. However, plaintiffs have failed to show that Cardona de Jesús was not afforded due process before being terminated and therefore are not entitled to summary judgment on this issue. Cardona de Jesús' personnel file does not contain a copy of the letter notifying her of her termination. In her deposition, Cardona de Jesús indicates she never requested a hearing. The Court will hold both parties' motions for summary judgment with respect to the due process claims of Cardona de Jesús in abeyance until it can hear evidence regarding whether she was accorded due process.

■ The parties agreed at the Initial Scheduling Conference that Blanca Berríos began working for the Municipality on September 16, 1991, as a Social Services Technician. Her personnel file contains a Notification of Appointment and Oath of Office (OCAP–11) that indicates that she was in-

deed appointed to this position on that date. However, it also contains another OCAP–11 appointing Blanca Berríos Maury to the position of Activities Coordinator on January 1, 1986. From all the documents in the personnel file, it is clear that Blanca Berríos Natal and Blanca Berríos [de] Maury are the same person. For example, the file contains a letter from former Mayor Juan R. de León Vélez in which he nominates "Blanca Berríos Natal" to the position of Activities Coordinator, although "Blanca Berríos Maury" appears on the OCAP–11 for this position. The file also contains a letter from Blanca Berríos de Maury in which she resigns from her position as Activities Coordinator at the Elderly Center effective July 31, 1990, because she was leaving to live outside Puerto Rico. It thus appears that Berríos first worked for the Municipality from 1986 to 1990 as an Activities Coordinator at the Elderly Center and then returned to Flórida to work as a Social Services Technician on September 16, 1991. The Notification of Appointment and Oath of Office (OCAP–11) for the Social Services Technician position indicates "By Proposal" in Box 13, which is used to indicate the type of appointment.[2] Since Berríos was not working for the municipality on August 30, 1991, she did not acquire any property interest in a career position by operation of Article 12.025 of Law 81. She did not acquire any property interest in her position as a Social Services Technician because the position was not classified as career status. Even if it had been classified as career, any property interest would have been rendered void under *Kauffman* since she did not compete for the position based on merit. Therefore, the Court hereby **GRANTS** defendants' motion for summary judgment and **DENIES** plaintiffs' cross motion for summary judgment with respect to the Fourteenth Amendment claim of Blanca Berríos.

■ Aida Mendoza Mercado began working for the Municipality at the Elderly Center on January 1, 1986, as an Administrative Assistant. No status was indicated for this appointment. Her file contains a Change Report indicating she received a salary in-

---

**2.** There are four options in this box that may be checked: regular, probationary, transitory and confidential service. "By Proposal" was typed in a blank area of this box.

crease effective November 1, 1989. Plaintiffs have produced no evidence to indicate that Mendoza Mercado attained career status or otherwise acquired a property interest in her position. To the contrary, in their supplemental opposition to defendants' motion for summary judgment, plaintiffs claim that Mendoza Mercado occupied a transitory position. Therefore, the Court hereby **GRANTS** defendants' motion for summary judgment and **DENIES** plaintiffs' cross motion for summary judgment with respect to the Fourteenth Amendment claim of Aida Mendoza Mercado.

■ María Virgen Perales Marrero began working as an Activities Coordinator at the Elderly Center on August 1, 1990. Her appointment was classified as "transitory." Therefore, she acquired transitory status by virtue of Article 12.025 of Law 81. Since transitory employees may be removed from service at any time during the terms of their appointments, P.R. Laws Ann. tit. 3, § 1336(9) (1992), she did not have any cognizable property interest in continued employment. Thus, the Court hereby **GRANTS** defendants' motion for summary judgment and **DENIES** plaintiffs' cross motion for summary judgment with respect to the Fourteenth Amendment claim of María Virgen Perales Marrero.

## VI. CONCLUSION

Due to the complexity of claims, plaintiffs, and defendants, the following is a summary of the claims and plaintiffs which remain after disposition of defendants' motion for summary judgment and plaintiffs' cross motion for summary judgment:

1. The First Amendment claims of Marísol Martínez Cátala, Administrative Assistant; Eusgardo Escribano Acevedo, Office Clerk; Efraín Marrero Santiago, Elderly Center Security Guard; Francisca Serrano Santiago, Director of the Elderly Center; Blanca Berríos, Activities Director for the Elderly Center; Aida Mendoza Mercado, Administrative Assistant at the Elderly Center; María Virgin Perales Marrero, Activities Coordinator at the Elderly Center; and Andrés Concepción Suárez, Elderly Center Security Guard, against both the Municipality and the individual defendants in their personal capacities.

2. The First Amendment claim of Rosa Cardona de Jesús against the Municipality only.

3. The Fourteenth Amendment claims of Miguel Cintrón Maldonado, Rosa Cardona de Jesús, Pedro Rivera Maldonado, Hector de León Vélez, Efraín Marrero Santiago, and Andrés Concepción Suárez against both the Municipality and the individual defendants in their personal capacities.

4. The Fourteenth Amendment claim of Nydia Díaz Cortez against the Municipality only.

A hearing is hereby **SET** for **9:30 a.m.** on **June 13, 1997,** for the Court to hear legal arguments and to receive further evidence on the issue of whether Hector de León Vélez, Miguel Cintrón Maldonado, Efraín Marrero Santiago, Rosa Cardona de Jesús and Andrés Concepción Suárez were deprived of their property interests in continued employment without due process of law. Thereafter, the Court will announce its decision as to the opposing motions for summary judgment. A pretrial hearing is hereby **SET** for **9:30 a.m.** on **July 24, 1997,** to be held in open court. At the hearing, plaintiffs **SHALL** present their position with respect to each plaintiff and shall identify the evidence they will adduce in favor of that position, which will be marked in preparation for trial. Defendants shall do the same with respect to each plaintiff. Jury selection **SHALL** commence at **9:30 a.m. on July 31, 1997,** and continue at **9:30 a.m. on August 1, 1997,** if necessary. The parties **SHALL** file proposed voir dire questions on or before **July 25, 1997.** Trial is hereby **SET** for **9:30 a.m.** on **August 12, 1997.** As substantial time has passed since this case was filed, and since it appears from the depositions that many of the plaintiffs have secured employment elsewhere, plaintiffs **SHALL** inform the Court **within 20 days before trial,** of which plaintiffs still wish to pursue the equitable remedy of reinstatement.

IT IS SO ORDERED.