**Rebecca JUDGE, Plaintiff, Appellant,**

v.

**CITY OF LOWELL, et al.,
Defendants, Appellees.**

No. 98–1248.

United States Court of Appeals,
First Circuit.

Heard Sept. 9, 1998.

Decided Nov. 18, 1998.

David J. Fine, with whom Dangel, Donlan and Fine was on brief for appellant.

Thomas E. Sweeney, City Solicitor, for appellee City of Lowell.

Neil Sherring, Assistant Attorney General with whom Michelle A. Kaczynski, Assistant Attorney General and Scott Harshbarger, Attorney General, were on brief for appellee Gerald Feigin, M.D.

Joseph G. Donnellan for appellees Daniel R. Brady, Barry Chevalier and Lewis Hunter.

Austin M. Joyce, with whom Michael J. Akerson and Reardon & Reardon were on brief for appellees William M. Taylor and William F. Busby.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Rebecca Judge brought this action pursuant to 42 U.S.C. § 1983 against the City of Lowell, Officers John J. Sheehan, Daniel R. Brady, William M. Taylor, William F. Busby,

Lewis Hunter, Barry Chevalier, David Tousignant, and Garrett Sheehan of the Lowell Police Department (in their individual capacities), and Medical Examiner Gerald Feigin, M.D. (in his individual capacity), for alleged violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Judge also brought claims under state law against Dr. Feigin and Officer Chevalier for intentional infliction of emotional distress. Defendants moved to dismiss the section 1983 claims in Judge's Third Amended Complaint pursuant to Fed. R.Civ.P. 12(b)(6) for failure to set forth a claim for relief. The court granted defendants' motions to dismiss the section 1983 claims and declined to exercise supplemental jurisdiction over the remaining state law claims. Judge appeals from the order granting defendants' motions to dismiss. We affirm.

## I. BACKGROUND

We summarize the facts and allegations set forth in the Third Amended Complaint.[1] Judge, who is black, is the sister of Gary Weems, who died on November 6, 1993. Weems was also black. On the date of Weems's death, both Judge and Weems resided at 7 Walter Terrace in Somerville, Massachusetts. Weems married Denise Richardson Weems in 1980, but they had been separated for several years at the time of Weems's death.

The Lowell Police Department discovered Weems's body on or about November 6, 1993. At that time, Weems had on his person various forms of identification that indicated that he lived at 7 Walter Terrace. He also had a bank passbook indicating that he and Judge jointly held a savings account. Notwithstanding the discovery of these items, the Lowell Police Department did not contact Judge or any other member of Weems's family to inform them of Weems's death. As a result, Judge did not learn of her brother's death until approximately six weeks after it

occurred. In the interim, Weems was buried in Lowell as an "unknown person."

After the Lowell Police Department discovered Weems's body, it conducted a homicide investigation. Police officers took witness statements from three individuals. Those statements indicated that Weems may have died as a result of an injection of narcotics administered by another person. In their statements, the witnesses contradicted one another as to the identity of the person or persons who administered the injection. The witnesses also indicated that (1) Weems had received over $90 in cash around 4:00 p.m. on November 5, 1993, but had no cash on his person when his body was discovered the next day, and (2) at some point during the night of November 5, 1993, Weems's pockets were turned inside out. Notwithstanding this evidence, the officers did not investigate Weems's death further. The officers did not interview additional persons who may have been present at the time of Weems's death. They did not seek out and interview any of Weems's family members.

Judge learned of Weems's death sometime in December, 1993. Shortly after learning that Weems had died, Judge, along with Denise Weems and Jestina Richardson, Denise Weems's mother (both of whom are also black), went to the office of Gerald Feigin, the Medical Examiner who had performed an autopsy on Weems's body. Initially, Dr. Feigin resisted meeting with the women. After Dr. Feigin agreed to meet with them, Judge asked Feigin to show the women something to demonstrate that the body that had been buried approximately six weeks earlier was that of Gary Weems. Dr. Feigin "reacted angrily and shoved a photograph of the dead man so far into Ms. Judge's face that she could not see it." (Third Amended Complaint, ¶ 22.) When Judge requested further information concerning the circumstances of Weems's death, Dr. Feigin "started yelling at the three women that he had showed [sic] them the photograph, that the photograph should be good enough for them

---

1. The district court denied Judge's motion for leave to file a Fourth Amended Complaint. Judge appeals from this denial. As we explain *infra*, we conclude that the court's denial of

Judge's motion for leave to file what would have been a fifth complaint was not an abuse of discretion.

and that he did not have time 'for this.'"
*See id.*

Judge alleges on information and belief that at the time Dr. Feigin prepared his autopsy report concerning Weems, he was aware of the "suspicious circumstances" discovered by the police, yet failed to include this information in his report. Dr. Feigin did not make any recommendation to the district attorney's office that Weems's death be further investigated.

Judge, Denise Weems and Ms. Richardson also visited the Lowell Police Department. The women spoke to an officer, believed to be Officer Chavalier, who, during their conversation, used the street names of certain drugs. When Judge indicated that she did not understand what the officer was referring to, "the officer responded in a manner which insinuated that because she was Black, she must know what he was referring to, and her claim that she did not know was disingenuous." When Judge asked the officer whether the police had found any forms of identification on Weems's person, the officer replied that they had not. When Judge asked for the return of Weems's personal belongings, the officer stated that the only item found on Weems's person was a knife. In response to questions concerning the circumstances of Weems's death, the officer "provided misleading and incomplete information."

In her Third Amended Complaint, Judge asserted four claims for relief. In Count I, brought pursuant to 42 U.S.C. § 1983,[2] she alleged that the officer defendants and Dr. Feigin violated the Equal Protection Clause of the Fourteenth Amendment. Judge alleged that Dr. Feigin and the officer defendants "violated their constitutional duty by discriminating against Rebecca Judge on the basis of her race and the race of her deceased brother Gary Weems and his wife Denise Weems," in that they failed to: (1) notify Weems's wife and next of kin of Weems's death; (2) deliver in a timely fashion to Weems's wife and next of kin Weems's personal belongings; (3) carefully inquire into the cause and circumstances of Gary Weems's death; (4) respect the right of Gary Weems's wife and next of kin to dispose of his body as they wished; (5) respond truthfully to requests for information regarding Gary Weems's death made by members of Gary Weems's family; (6)investigate the circumstances of Gary Weems's death with due regard to the possibility that the death may have resulted from criminal acts; (7) pursue carefully evidence of suspicious circumstances regarding Gary Weems's death; and (8) notify the district attorney's office of evidence warranting the attention of that office.

Judge alleged "on information and belief" that the above conduct "would not have been characterized by the gross deficiencies with which it was characterized had [she], her deceased brother Gary Weems and his wife Denise Weems been White, instead of Black." Judge further alleged that these circumstances

> were part and parcel of a pattern and practice, pursuant to which one level of care is used by defendants in the investigation of the deaths of White persons, and another, inferior level of care is used by defendants in the investigation of the death of Black persons, particularly if the Black persons in question are ostensibly of a low economic class and the cause of death is ostensibly a drug overdose.

*Id.*, ¶ 33. As support for this "pattern and practice" allegation, Judge cited the case of Kasha Blount, a black woman from Dorcester, Massachusetts, who died in February 1990 under allegedly suspicious circumstances. According to newspaper articles appended to the Third Amended Complaint, a man was tried in the Blount case on homicide charges, but was acquitted by a jury. The articles indicate that Dr. Feigin was the medical examiner in the Blount case. Relying upon statements made by Blount's mother to the press, Judge alleges that Dr. Feigin failed to properly investigate Ms. Blount's death because she was black.

---

**2.** Section 1983 authorizes actions for equitable relief and/or damages against "[e]very person who under color of any ... custom or usage, of any State or Territory ... subjects or causes to be subjected any citizen of the United States or other person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

In Count II, Judge alleged that the City of Lowell had exhibited "deliberate indifference" by failing to "establish a custom and policy that prohibited discrimination on the basis of race in the discharge of the legal obligations at issue," and by failing to recruit and train its police officers "in such a way as to ensure that they would not discriminate on the basis of race in the discharge of the legal obligations at issue." In Counts III and IV, Judge alleged state law claims for intentional infliction of emotional distress against Dr. Feigin and Officer Chevalier.

After Judge filed her initial complaint, she amended it three times. The defendants filed motions to dismiss the Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for relief under section 1983. At a scheduling conference held after those motions were filed, the court expressed skepticism that the Second Amended Complaint set forth sufficient factual support for Judge's allegation of racial animus. Nevertheless, the court denied the motions to dismiss without prejudice to their being renewed at a later date. Judge filed a Third Amended Complaint, in which she elaborated on the specific alleged omissions of the defendant officers and Dr. Feigin, and cited the Blount case. The defendants renewed their motions to dismiss for failure to state a claim, and the court granted the motions. The court denied Judge's motion to reconsider and her motion for leave to file a Fourth Amended Complaint. Having dismissed the federal claims set forth in Counts I and II, the court declined to exercise supplemental jurisdiction over the two remaining state law causes of action (Counts III and IV) and dismissed them as well.

## II. DISCUSSION

Judge argues on appeal that the district court erred in dismissing her Third Amended Complaint. We conclude that the district court properly dismissed Counts I and II of Judge's Third Amended Complaint and, having done so, properly dismissed the remaining state law claims. Judge also challenges the denial of her motion for leave to file a Fourth Amended Complaint. We conclude that the court did not abuse its discretion in denying that motion.

### A. Dismissal of the Third Amended Complaint

■ We review the disposition of a motion to dismiss de novo. See LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir.1998). Rule 8(a) provides that the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). In an oft-quoted gloss, the Supreme Court stated over forty years ago that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ Notwithstanding Conley, this circuit and others have held that in civil rights cases such as the present, a bare conclusory allegation of the critical element of illegal intent, including of an intent to discriminate, is insufficient. We have required the plaintiff "to allege particulars sufficient to sanction a factfinder in drawing a reasonable inference of intentional disparate treatment based on race." The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). Put another way, the element of illegal motive must be pleaded by alleging specific non-conclusory facts from which such a motive may reasonably be inferred, not merely by generalized asseveration alone. See Correa–Martinez v. Arrillaga–Belendez, 903 F.2d 49, 51 (1st Cir.1990) (requiring that alleged facts in complaint "specifically identify the particular instance(s) of discriminatory treatment and, as a logical exercise, adequately support the thesis that the discrimination was unlawful").[3]

---

3. We have indicated that requiring the pleading of such facts serves at least three useful purposes. First, it gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47, 78 S.Ct. 99. Second, we have recognized that "rising litigation costs (and the associated impact of an improper threat of litigation) speak for requiring some specificity before permitting a claimant 'to drag a defendant past the pleading thresh-

The above-mentioned cases in this circuit predate the Supreme Court's decision in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), as well as the Court's very recent decision in *Crawford–El v. Britton*, — U.S. ——, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). As the district court relied upon the earlier First Circuit caselaw in determining that the Third Amended Complaint was legally inadequate, we must decide whether the requirement stated in those cases survives *Leatherman* and *Crawford–El*. Based particularly on the Court's dicta in *Crawford–El*, *infra*, we believe that it does, at least in a case like the present alleging a constitutional violation calling for proof of an illegal motive. We also believe, contrary to Judge's contentions, that the district court did not err in its manner of applying our precedents to the Third Amended Complaint.

Were *Leatherman* the Supreme Court's last and only word, we would be less certain of the correctness of our refusal, in circumstances like the present, to accept purely conclusory pleading on the element of discriminatory intent.[4] In *Leatherman*, the Court rejected a heightened pleading standard imposed by the Fifth Circuit in cases alleging municipal liability under section 1983. The case arose out of complaints filed against two municipalities for their officers' forcible entry into residences the officers suspected were fronts for drug-manufacturing operations. The district court and the Fifth Circuit, both applying the latter's heightened pleading standard in civil rights cases, held that the complaints should be dismissed. The Supreme Court reversed.

The Court found it "impossible to square the 'heightened pleading standard' applied by

the Fifth Circuit ... with the liberal system of 'notice pleading' set up by the Federal Rules." *Leatherman*, 507 U.S. at 168, 113 S.Ct. 1160.[5] The defendants in *Leatherman* argued that a heightened pleading requirement was necessary because "a more relaxed pleading requirement would subject municipalities to expensive and time consuming discovery in every § 1983 case, eviscerating their immunity from suit and disrupting municipal functions." *Id.* The Supreme Court observed, however, that "unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified," *id.*, suggesting the result might be different in individual capacity actions against government officials. The Court specifically reserved judgment on the question whether its "qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." *Id.*

Judge argues that in *Crawford–El*, the Court answered that question in the negative. We are not so sure, but, in any case, immunity was not (as the Supreme Court pointed out) the key issue there, any more than it was here. In *Crawford–El*, the Supreme Court rejected the D.C. Circuit's requirement that a plaintiff bringing a claim under section 1983 against a government official in his or her individual capacity, regarding which the official's improper motive is a necessary element, adduce "clear and convincing evidence" of such motive in order to defeat a motion for summary judgment. 118 S.Ct. at 1595. The Court of Appeals had adopted this heightened evidentiary requirement to protect government officials, in a doubtful case, from the burdens of discovery and trial. The Supreme Court held that the

old.'" *Boston & Maine Corp. v. Hampton*, 987 F.2d 855, 865 (1st Cir.), *reh'g denied*, 7 F.3d 281 (1993)(quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988)). Third, we have noted that the "burgeoning caseload crisis in the district courts weighs in favor of earlier disposition of baseless claims." *Boston & Maine Corp.*, 987 F.2d at 865.

4. *See, e.g.*, Karen M. Blum, Heightened Pleading: Is There Life After Leatherman?, 44 Cath. U.L.Rev. 59, 78–86 (1994) (noting lack of consensus, after *Leatherman*, in courts of appeals as to

pleading requirements in section 1983 individual capacity suits where state of mind is at issue).

5. The heightened standard applied by the Fifth Circuit required that trial judges "demand that the plaintiff's complaints state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." *Leatherman*, 507 U.S. at 167, 113 S.Ct. 1160 (quoting *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir.1985)).

D.C. Circuit went too far in increasing the plaintiff's evidentiary burden. The Court continued, however, with strong dicta dealing squarely with the issue now before us. Indicating awareness and some sympathy with "the potential problem that troubled the court," the Supreme Court said that it was "therefore appropriate to add a few words on some of the existing procedures available to federal trial judges in handling claims that involve examination of an official's state of mind." *Id.* at 1596.[6] The Court stated that

> [w]hen a plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings.

*Id.*

One way of accomplishing this, the Court went on, was for trial courts, prior to permitting any discovery, to use existing procedures, such as ordering a plaintiff to reply to a defendant's answer[7] or granting defendant's motion for a more definite statement[8], to require that plaintiffs allege *specific facts supporting an allegation of wrongful motive*. *Id.* at 1596. The Supreme Court then stated, in unequivocal language directly relevant to the issue under consideration, that "the [trial] court may insist that the plaintiff 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment." *Id.* (quoting in part *Siegert v. Gilley*, 500 U.S. 226, 236, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (Kennedy, J., concurring in judgment)). "This option exists," the Court went on to state, "even if the official chooses not to plead the affirmative defense of qualified immunity." *Id.* 118 S.Ct. at 1597.[9]

Judge's Count I section 1983 claim rests upon allegations of unconstitutional motive (i.e., intent to discriminate because of race) on the part of several defendants sued in their individual capacities. *See infra.* In *Crawford–El*, the Supreme Court recognized that claims against individual public officials have the potential to subject them to burdensome discovery and trials and stated that district judges may dispose of such claims prior to permitting any discovery where a plaintiff, having been provided the opportunity to do so, fails to allege "specific, nonconclusory *factual* allegations that establish improper motive." 118 S. Ct at 1596 (emphasis provided). We conclude, therefore, that the five Justices writing for the Court in *Crawford–El* permitted an approach similar to ours in *Dartmouth Review* and *Correa–Martinez*, calling for the pleading of specific facts from which to infer illegal motive—although the Court limited its carefully-phrased endorsement of that approach to constitutional claims in which "improper motive" was an essential element for plaintiff to prove. *See Crawford–El*, 118 S.Ct. at 1596. As Count I here precisely involves an action under section 1983 against state officials in their individual capacities requiring plaintiff to prove improper motive, *see infra*, we regard the majority's carefully-fashioned dicta in *Crawford–El* as allowing the continued use here of

---

**6.** The Court noted that the D.C. Circuit's heightened proof requirement was

> that court's latest effort to address a potentially serious problem: because an official's state of mind is easy to allege and hard to disprove, insubstantial claims that turn on improper intent may be less amenable to summary disposition than other types of claims against government officials. This category of claims therefore implicates obvious concerns with the social costs of subjecting public officials to discovery and trial, as well as liability for damages.

118 S. Ct. at 1590 (quotations and internal citations omitted).

**7.** *See* Fed.R.Civ.P. 7(a).

**8.** *See* Fed.R.Civ.P. 12(e).

**9.** We note that the individual defendants in this case have pleaded immunity as an affirmative defense. They did not, however, seek dismissal based on the immunity defense, but rather on Judge's failure to state a viable claim under section 1983. In *Crawford–El*, the Court made plain that the key factor permitting the requirement that facts, not merely a conclusion, be pleaded, was the existence of "a claim that requires proof of a wrongful motive," *id.* 118 S.Ct. at 1596, not an immunity defense as such.

the standard reflected in this circuit's previous caselaw and applied below.[10]

■ We therefore examine Count I of Judge's Third Amended Complaint to determine whether it meets the standard permitted in *Crawford–El* ("specific, nonconclusory factual allegations that establish that defendant acted based upon an improper motive"), a standard, as we say, similar to that articulated by this circuit in *Dartmouth Review* and progeny.[11] In so applying that standard, we bear in mind that, in Count I, Judge alleged that the federal right she was denied was the right to equal protection of the laws under the Fourteenth Amendment. One who asserts that governmental action violates the Equal Protection Clause must show that he or she is "the victim of intentional discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) ("The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race."). In order to state a claim under the Equal Protection Clause, a plaintiff must allege not only that the defendants were aware of her race at the time of their actions, but also that defendants acted because of her race. *See Personnel Administrator v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979).[12] "Improper motive" is, therefore, a key element of proof in the instant case, entitling the district court to demand, as already said, that such motive be pleaded not just conclusorily but by *specific, nonconclusory factual* allegations giving rise to a reasonable inference of racially discriminatory intent. *See Dartmouth Review*, 889 F.2d at 16.

■ Judge alleges in Count I that the defendants[13] failed to carry out various duties in connection with the discovery of Weems's body and the investigation of Weems's death. First, Judge alleges that the defendants failed to notify her of Weems's death in a timely manner, which caused her brother to be buried as an "unknown person."[14] Second, Judge alleges

10. Several other circuits have suggested or held, after *Leatherman*, that their similar requirement continues to apply to claims against government officials in their private capacity. *See Jordan v. Jackson*, 15 F.3d 333, 336 (4th Cir.1994); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994); *Veney v. Hogan*, 70 F.3d 917, 921 (6th Cir.1995); *Edgington v. Missouri Dep't of Corrections*, 52 F.3d 777, 779 n. 3 (8th Cir.1995); *Branch v. Tunnell*, 14 F.3d 449 (9th Cir.), *cert. denied*, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994); *Kimberlin v. Quinlan*, 6 F.3d 789, 795 (D.C.Cir.1993), *cert. granted*, 513 U.S. 1123, 115 S.Ct. 929, 130 L.Ed.2d 876, *cert. vacated*, 515 U.S. 321, 115 S.Ct. 2552, 132 L.Ed.2d 252 (1995), *appeal dismissed on other grounds*, 1995 WL 759464 (D.C.Cir. Nov.8, 1995).

11. As the Supreme Court indicated in *Crawford–El*, trial courts have existing procedures at their disposal to require plaintiffs to plead specific factual allegations. Similarly, we noted in *Boston & Maine Corp.* that a trial court should provide plaintiff an opportunity to cure a deficiency after notice that the trial court intended to invoke a specificity of pleading requirement. 987 F.2d at 866. The district court's indication at the scheduling conference that it did not believe Judge's Second Amended Complaint contained sufficient factual support for the allegation of racial animus, along with the court's allowance of leave to file a Third Amended Complaint, satisfied this requirement. Although the court did not invoke the specific procedures mentioned

by the Court in *Crawford–El*, in practical effect the court allowed Judge a further opportunity to provide the specificity the court clearly indicated it found missing from her complaint.

12. The injury Judge claims to have personally suffered is racial discrimination. This is not a case in which plaintiff's injuries are alleged to flow from some harm to the deceased. *Cf. Figueroa v. Rivera*, 147 F.3d 77 (1st Cir.1998) (section 1983 action brought by family members of inmate who died while incarcerated, alleging failure to provide adequate medical care).

13. The district court allowed motions to dismiss filed by Officers Brady, Hunter, Taylor, Busby, and Sheehan on the ground that the complaint did not contain any general or specific allegations of wrongdoing by these defendants. Reading the complaint in the light most favorable to Judge, we conclude that Judge's general allegations of omissions by all of the officer defendants as a group gave the defendants "fair notice," *Conley*, 355 U.S. at 47, 78 S.Ct. 99, of at least the general nature of Judge's claims against them. We therefore consider Judge's allegations of specific omissions as made against all of the officer defendants.

14. Judge does not assert in this case that she has a property interest, under the due process clause of the Fourteenth Amendment, in the possession

that the government officials—the officer defendants and Dr. Feigin—failed, respectively, to conduct an adequate homicide investigation and prepare a proper autopsy report, despite the existence of "suspicious circumstances." Third, Judge alleges that defendants were rude to her when she sought information concerning Weems's death. Judge alleges that all of these omissions occurred because she is black.[15] In sum, Judge alleges a double standard whereby deaths of black persons that occur under suspicious circumstances are treated differently (i.e., less seriously) than deaths of white persons under similar circumstances, and that the families of the black decedents are injured by this disparate treatment.[16]

Associated with the above, Judge made several other more specific assertions: First, that when Judge confronted Dr. Feigin and Officer Chevalier approximately six weeks after Weems's death, they failed to provide her basic and accurate information concerning the circumstances of Weems's death and engaged in rude, insulting and unprofessional behavior. Second, Judge alleges that Officer Chevalier "insinuated" that she knew the street names for certain drugs. Third, Judge alleges that her allegation of disparate treatment based on race is supported by the facts of the Kasha Blount case, a state court

proceeding reported in the newspaper which involved a black teenager who died in Dorchester under suspicious circumstances and an allegedly mishandled autopsy performed by Dr. Feigin. Neither separately nor taken with the others, however, do these alleged facts give rise, by themselves, to a reasonable inference that defendants were motivated by racial considerations.

 State actors will, of course, violate the Equal Protection Clause if they deliberately and selectively deny protective services to the members of a disfavored minority. See DeShaney v. Winnebago County, 489 U.S. 189, 197 n. 3, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). But, as we said in Dartmouth Review, "merely juxtaposing the fact of one's race with an instance of discrimination is insufficient to state a claim." Id. at 19. In Dartmouth Review, white student editors of an off-campus newspaper who were suspended following a confrontation with a black professor brought a civil rights action against the college and various college officials, alleging that their suspension was racially motivated. The district court dismissed their complaint for failure to state a claim. We affirmed, holding that "[a]bsent some meaningful, fact-specific allegation of a causal link between defendant's conduct and plaintiff's race, the complaint's first count cannot

---

of Weems's body. Cf. Whaley v. County of Tuscola, 58 F.3d 1111, 1117 (6th Cir.) (concluding that Michigan law provides next of kin a property interest in dead relative's body), cert. denied, 516 U.S. 975, 116 S.Ct. 476, 133 L.Ed.2d 404 (1995). In opposing the defendants' various motions to dismiss, Judge made clear that "the essence" of her complaint in this case is not that defendants improperly disposed of her brother's body, but rather that defendants' acts and omissions deprived her of the equal protection of the laws.

**15.** A section 1983 lawsuit is a personal action. See Dohaish v. Tooley, 670 F.2d 934, 936 (10th Cir.) (Section 1983 action "is a personal suit"), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). Thus, we read Judge's complaint as asserting violations of her own civil rights, and not those of Weems's other family members or of Weems himself, on behalf of Weems's estate. As to the former, it is not clear that Judge has standing to assert the rights of other family members. See Benjamin v. Aroostook Med. Ctr., 57 F.3d 101, 105–06 (1st Cir. 1995) (patients lack standing to assert third-party rights of physician). As to the latter, we note

that all of the actions that form the basis of Judge's claims occurred subsequent to Weems's death. At that time, Weems had no rights of which he could be deprived. See, e.g., Guyton v. Phillips, 606 F.2d 248, 250 (9th Cir.1979) ("the Civil Rights Act ... does not provide a cause of action on behalf of a deceased person based upon alleged violation of the deceased's civil rights which occurred after his death."), cert. denied, 445 U.S. 916, 100 S.Ct. 1276, 63 L.Ed.2d 600 (1980).

**16.** Insofar as Judge also alleges disparate treatment of drug addicts and poor people, those allegations are unlikely to rise to the level of an equal protection violation. See, e.g., Nestor Colon Medina & Sucesores v. Custodio, 964 F.2d 32, 44 (1st Cir.1992) (limiting equal protection claims to cases involving egregious abuses of power or "invidious discrimination," such as on the basis of race or sex). See also San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)(holding that income level is not a suspect class under the Equal Protection Clause). We focus, for present purposes, on Judge's race-based contentions.

stand." *Id.* Thus, to survive a motion to dismiss Count I, Judge must set forth specific factual allegations supporting a causal link between defendants' conduct and her race.

Count I fails to assemble "specific facts adequate to show or raise a plausible inference that [Judge] was subjected to race-based discrimination." *Dartmouth Review,* 889 F.2d at 17. Judge alleges that the officer defendants failed to notify her of Weems's death because she is black. But the mere conclusory assertion that the failure to notify was racially motivated is not enough. She further alleges that Dr. Feigin and the officer defendants failed to conduct, respectively, a proper autopsy and an adequate homicide investigation because she is black. But such errors, like the failure to notify, do not by themselves necessarily imply racial animus, and the mere conclusory allegation of such will not suffice.

The only factual allegations in the complaint that, liberally read, might be arguably construed as implying any racial animus toward Judge are that Dr. Feigin was rude to Judge and that Officer Chevalier was insensitive and "insinuated" that Judge should know the street names of certain drugs. But we think these fall short of indicating that race was a causal factor. The rudeness and insensitivity might have resulted from any of a host of factors, including irritability, defensiveness in the face of criticism, dislike for suspected drug users, their friends and families, or simple arrogance.

We have said that the facts alleged must "specifically identify the particular instance(s) of discriminatory treatment and, as a logical exercise, adequately support the thesis that the discrimination was unlawful." *Correa–Martinez,* 903 F.2d at 53. The allegations concerning the behavior of Dr. Feigin and Officer Chevalier during their conversations with Judge, if true, undoubtedly evince rude and unprofessional conduct. But rude and unprofessional conduct are, unfortunately, all too prevalent in the world. Persons from any racial background may sometimes encounter it. That behavior without more—reprehensible as it is—falls short of creating a reasonable inference that Judge's race—as opposed to other factors—was a motivating

factor in defendants' alleged responses subsequent to Weems's death. Were we to hold otherwise, any unsatisfactory dealings between a public official and a minority, female or other citizen falling into a protected category would give rise, prima facie, to a potential equal protection claim.

We recognize that it will be the rare case in which a plaintiff can point to specific racist statements made by government officials. Intent to discriminate may be demonstrated by circumstantial evidence. *See Washington v. Davis,* 426 U.S. 229, 253, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (Stevens, J., concurring). But the facts alleged still must, "as a logical exercise," *Correa–Martinez,* 903 F.2d at 53, adequately support the thesis that defendants' omissions were motivated, at least in part, by racial animus. Here, where after-the-fact rude behavior and a single "insinuation" are not tied to other allegations of fact that support the thesis that black deaths and white deaths are treated differently by the police and medical examiner in Lowell, that support is lacking.

The rule that we accept plaintiff's well-pleaded factual averments and indulge every reasonable inference hospitable to her case "does not entitle a plaintiff to rest on 'subjective characterizations' or conclusory descriptions of a 'general scenario which could be dominated by unpleaded facts.'" *Id.* at 53 (quoting *Dewey v. Univ. of New Hampshire,* 694 F.2d 1, 3 (1st Cir.1982), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983)). Judge's reliance on the case of Kasha Blount, who died in Dorchester, Massachusetts in 1990 under allegedly suspicious circumstances and whose autopsy report was apparently prepared by Dr. Feigin, does not cure the lack of specificity with regard to improper motive in her complaint. We repeat what we said in *Dartmouth Review:*

> It is apodictic that evidence of past treatment toward others similarly situated can be used to demonstrate intent in a race discrimination suit. To put flesh upon the bare bones of this theory, appellants' obligation was to identify and relate specific instances where persons situated similarly

'in all relevant respects' were treated differently . . .

889 F.2d at 19 (citations omitted). Blount's death was investigated by the Dorchester Police Department. There is no allegation that the Lowell Police Department was involved. Thus, with respect to the officer defendants, the circumstances of the Blount case are not similar "in all relevant respects." As to Dr. Feigin, even assuming he mishandled the Blount case, there is only the opinion of Blount's mother, as stated in the press, to suggest any racial motivation behind Dr. Feigin's alleged failings in the Blount case.

Judge asks us to view defendants' behavior in the total context of the various alleged omissions on the part of defendants, including their failure to notify Weems's family members and the allegedly improper investigation and autopsy. But we do not find the totality of circumstances sufficient to make out her constitutional claim. Her allegations boil down to inept, sloppy police and coroner performance at the time of Weems's death followed by rude, defensive behavior by the same officials some weeks later when Weems's family complained. That combination of interrelated, offensive events falls short of raising a reasonable inference of racial motivation for the acts or omissions alleged.

Judge, in short, has merely "juxtapos[ed] the fact of one's race," *Dartmouth Review*, 889 F.2d at 19, with conduct which, on its face, may as likely stem from negligence and incompetence as from racial animus. This is insufficient to state a claim of race-based discrimination. *See Correa–Martinez*, 903 F.2d at 53 (plaintiff "may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by discriminatory animus"). As we stated in *Dartmouth Review:*

> Gauzy generalities, unsupported conclusions, subjective characterizations, and problematic suppositions can sprout as easily as crabgrass in an imaginative litigant's (or lawyer's) word processor. Therefore, to avoid tarring defendants' reputations unfairly and to prevent potential abuses, we have consistently required plaintiffs to

outline facts sufficient to convey specific instances of unlawful discrimination.

889 F.2d at 16. *See also Correa–Martinez*, 903 F.2d at 51 (deferential reading of complaint does not require that we credit "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation").

As Judge's complaint contains no specific factual allegation which, alone or in combination with other well-pled facts, gives rise to a reasonable inference that defendants were motivated by anti-black racial animus rather than by other equally plausible factors at the time of the alleged omissions, we affirm the district court's dismissal of Count I of the Third Amended Complaint.

The failure of Count I to state a claim is fatal to Count II. In Count II, Judge alleges that the City of Lowell violated her right to equal protection because it (1) failed to establish a custom and policy that prohibited discrimination on the basis of race in the discharge of the duties at issue, and (2) failed to recruit and train police officers in such a way as to ensure that they would not discriminate on the basis of race in the discharge of their duties.

██ We have held that Judge failed sufficiently to allege any constitutional injury in Count I of the complaint. Thus, even if the City of Lowell failed to take adequate steps to prohibit discrimination and failed to recruit and train its police officers so as to ensure that they would not discriminate, there is no allegation in the complaint sufficient to show that such a policy caused harm to the plaintiff Judge who, for reasons already discussed, suffered no constitutional injury. A section 1983 claimant cannot recover unless the claimant also proves that the custom caused the resulting injury or deprivation of rights. *See Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, the dismissal of Count II was proper.

This is not to say that Judge may be left without a remedy. Defendants' failure to act upon the information they discovered when they found Weems's body, along with their allegedly rude and insensitive behavior, could

conceivably give rise to claims under Massachusetts law. Weems's wife, and perhaps other family members, may have viable state law claims against defendants arising from the handling of Weems's body, although we offer no opinion concerning that possibility. *See Soto v. Flores*, 103 F.3d 1056, 1072 (1st Cir.) ("Whether this deplorable scenario is actionable under Puerto Rican law we leave, as we must, to others."), *cert. denied,* —— U.S. ——, 118 S.Ct. 71, 139 L.Ed.2d 32 (1997). Our present holding is simply that the allegations set forth in the complaint do not properly assert violations of the Equal Protection Clause of the Fourteenth Amendment.

## B. *Denial of Judge's Motion to Amend the Complaint*

▮▮▮ The district court denied Judge's motion for leave to file a Fourth Amended Complaint. Judge challenges the denial on appeal. We review the district court's denial of leave to amend the complaint "for an abuse of discretion, and defer to the district court if any adequate reason for the denial is apparent on the record." *Grant v. News Group Boston, Inc.*, 55 F.3d 1, 5 (1st Cir. 1995).

▮▮▮ Under Federal Rule of Civil Procedure 15(a), a litigant may amend a pleading once as a matter of right before a responsive pleading is filed and subsequently by the parties' consent or "by leave of court." Fed. R.Civ.P. 15(a). While "leave [to amend] shall be freely given when justice so requires," *id.,* "the liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases," 6 Charles Alan Wright *et al., Federal Practice and Procedure* § 1487, at 611 (2d ed.1990). Where an amendment would be futile or would serve no legitimate purpose, the district court "should not needlessly prolong matters." *Correa–Martinez*, 903 F.2d at 59; *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (citing "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment" as proper grounds for denial of leave to amend).

Judge amended her complaint three times prior to dismissal. After she filed her Sec-

ond Amended Complaint, the court advised the parties of its doubt that Judge had set forth sufficient factual allegations to plead an inference of racial animus. Nevertheless, the court allowed Judge to file a Third Amended Complaint prior to ruling on defendants' then-pending motions to dismiss. In her Third Amended Complaint, Judge added two defendants. Judge also added several new paragraphs to the complaint that expanded on her allegation that the defendants had violated various duties owed to her and that these breaches constituted a "pattern or practice" of discrimination. As to the latter, Judge appended to the complaint newspaper articles concerning the Kasha Blount case. None of these amendments, however, added any non-conclusory factual allegations to support the conclusion that defendants' alleged omissions were motivated by racial animus. The district court dismissed the Third Amended Complaint, and we have concluded that it properly did so.

Judge sought leave to file a Fourth Amended Complaint. The district court denied Judge's motion without comment. The only difference between the Third Amended Complaint and the proposed Fourth Amended Complaint was the addition of a new paragraph that identified two reported cases from the Massachusetts Court of Appeals in which the victims, allegedly white, died under circumstances alleged to be similar to those of Weems. Judge alleged that these victims' cases resulted in a full investigation and prosecution because the victims, unlike Weems, were white.

▮▮▮ These new allegations failed to cure the fundamental defect in Judge's complaint. The two reported decisions identified by Judge do not indicate which, if any, of the officer defendants were involved in the investigations. Nor do the opinions identify Dr. Feigin as the medical examiner in either case. Even assuming that the "suspicious circumstances" in the two reported cases were nearly identical to those in the present case, there is nothing in the reported opinions that remotely suggests that the performances of the government officials in those cases were motivated by the victims' race. The allegations involving these decisions do

not supply the missing causal link between defendants' alleged omissions in this case and Judge's race. Even accepting the proposed amendments, Judge has alleged only that in one case (the Blount case in Dorchester) the officials acted improperly, while in two other cases the officials acted properly. Without more, she then attributes the officials' acts and omissions to the race of the victim-decedents. This inference is no more than a "general scenario which could be dominated by unpleaded facts." *Dewey v. Univ. of New Hampshire,* 694 F.2d 1, 3 (1st Cir.1982), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983). Moreover, it is a scenario that encompasses only one case of allegedly improper conduct compared with two cases of allegedly proper conduct. "[T]he mere existence of disparate treatment—even widely disparate treatment—does not furnish adequate basis for an inference that the discrimination was racially motivated." *Dartmouth Review,* 889 F.2d at 20.

The amendment proffered by Judge failed to cure the deficiency identified by the court in its examination of the Third Amended Complaint. Granting the proposed amendment would have been futile. Under these circumstances, we conclude that the court did not abuse its discretion in denying Judge leave to file the Fourth Amended Complaint.

*Affirmed. Each party to bear its own costs.*