**EDUCADORES PUERTORRIQUEŃOS
EN ACCION, et al., Plaintiffs,**

v.

**Cesar Rey HERNANDEZ,
et al., Defendants.**

**No. Civ. 01–2702(JAG).**

United States District Court,
D. Puerto Rico.

Feb. 27, 2003.

Francisco R. Gonzalez–Colon, F.R. Gonzalez Law Office, San Juan, PR, for Plaintiffs.

Rafael Escalera–Rodriguez, Beatriz Annexy–Guevara, Reichard & Escalera, San Juan, PR, Maria Santiago–De–Vidal, Dept. of Justice, Federal Litigation Division, San Juan, PR, Eileen Landron–Guardiola, Eduardo Vera–Ramirez, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.[1]

Plaintiffs Educadores Puertorriqueños en Accion ("EPA"), an employee association of the Puerto Rico Department of Education ("DE"), Carmen R. Castillo–Rodriguez, Angel A. Marti–Lopez, Elsie Atresino–Martinez, Luis Cores–Babilonia, Eranio Collazo–Ocasio, Santos M. Mercado Sorrentini, Angel A. Valentin Feliciano, Wilfredo Soto–Gonzales, Angel Marrero–Colon, and Griselle Hernandez–Batallar (collectively, "plaintiffs") brought suit pursuant to 42 U.S.C. § 1983 against Cesar Rey Hernandez, ("Rey"), Secretary of the DE, and other DE employees, (collectively, "defendants") for political discrimination under the First Amendment and for due process violations under the Fourteenth Amendment. Plaintiffs claim that Rey declared their personnel transactions null

and void in violation of their First and Fourteenth Amendment rights. Rey moved to dismiss, arguing that he was merely complying with state law. He further contends that the transactions took place during the electoral prohibition period, during which government agencies and municipalities may not make personnel movements such as appointments, promotions, demotions, employee category changes, and transfers. Rey also claims that since the transactions were illegal, plaintiffs lacked any property rights over their positions. For the reasons discussed below, the Court grants defendants' motion.

## FACTUAL BACKGROUND

Plaintiffs, who are members of the New Progressive Party ("NPP"), the past administration, work as career supervisors within the DE. (Docket No. 1 at 10, 11.) Following the Puerto Rico general elections on November 7, 2000, the Popular Democratic Party ("PDP") became the new administration in power.

In or about December 2000, the DE appointed plaintiffs to new positions within the Department, such as Assistant Superintendent III.[2] (*Id.* at 2–3, 9.) These appointments occurred during the pre-and post-electoral prohibition established in Section 4.7 of the Puerto Rico Public Service Personnel Act, 3 P.R. Laws Ann. § 1337. (*Id.* at 12.) This statute states that "during the period before and after elections, the authorities shall abstain from making any movement of personnel involving areas essential to the merit principle, such as appointments, promotions, demotions, transfers, and changes in the category of the employees." 3 P.R. Laws Ann.

---

1. Britt E. Arrieta–Rivera, a third year student at the University of Puerto Rico Law School, assisted in the research and preparation of his opinion.

2. The Complaint does not specify who made the appointments. The Court assumes the previous DE officers did. Aside from Carmen Castillo–Rodriguez's appointment, the Complaint does not specify the positions to which the DE transferred the remaining plaintiffs.

§ 1337. This prohibition applies "two (2) months before and two (2) months after General Elections are held in Puerto Rico." *Id.*

In or about November 2001, plaintiffs received letters signed by Rey stating that the appointments made during the prohibition period were illegal. As a result, Rey informed plaintiffs that the DE would return them to their previous positions.[3] (Docket No. 1 at 12–13.)

Plaintiffs brought suit claiming that defendants actions were a pretext to discriminate against them on the basis of their political affiliation, in violation of their First Amendment rights. (*Id.* at 12.) Furthermore, plaintiffs claim that since they had a property right over their new positions, Rey violated their due process rights under the Fourteenth Amendment. (*Id.* at 17.)

On June 11, 2002, Rey filed a motion to dismiss, claiming that plaintiffs had failed to state a claim for political discrimination under 42 U.S.C. § 1983. Rey argued that plaintiffs did not meet the heightened pleading standard requirement set forth in *Judge v. City of Lowell,* 160 F.3d 67, 72–74 (1st Cir.1998). (Docket No. 15 at 8–9.) Additionally, Rey claimed that even if plaintiffs had established a *prima facie* case of political discrimination, he would have declared the transactions null and void in any event, because they were illegal. (*Id.* at 9.) As a corollary, Rey argued that because the personnel transactions were illegal, plaintiffs lacked a property right over their new positions. (*Id.* at 12.)

## DISCUSSION

### A. *Rule 12(b)(6) Standard for a Motion to Dismiss*

■ Pursuant to Fed.R.Civ.P. 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Brown v. Hot, Sexy, and Safer Prods., Inc.,* 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiffs favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996).

■ When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (*citing Correa–Martinez,* 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

### B. *Political Discrimination claim*

To prevail in a § 1983 claim, plaintiffs bear the burden of showing that defendants, acting under color of state law, deprived them of their federal constitutional rights, privileges, or immunities. *See, e.g., Romero–Barcelo v. Hernandez–Agosto,* 75 F.3d 23, 32 (1st Cir.1996). It is well-established that political discrimination restrains freedom of belief and association,

---

**3.** The Complaint does not specify when the plaintiffs received the letters. It only makes reference to Carmen Castillo–Rodriguez's letter.

core activities protected by the First Amendment. *See Elrod v. Burns,* 427 U.S. 347, 354, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Padilla–Garcia v. Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000).

▮ To prevail on their political discrimination claim, plaintiffs must establish a *prima facie* case by demonstrating: 1) that they engaged in constitutionally protected conduct; and 2) that this conduct was a substantial or motivating factor in an adverse employment decision affecting them. *See Mt. Healthy City Sch. Dist. Bd. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Padilla–Garcia,* 212 F.3d at 74. To meet this burden, plaintiffs must show that there is a causal connection linking Rey's conduct to their political beliefs. *See LaRou v. Ridlon,* 98 F.3d 659, 662 (1st Cir.1996). Circumstantial evidence may be sufficient to support a finding of political discrimination. *Estrada–Izquierdo v. Aponte–Roque,* 850 F.2d 10, 14 (1st Cir.1988); *Kercado Melendez v. Aponte Roque,* 829 F.2d 255, 264 (1st Cir. 1987); *Martinez Catala v. Guzman Cardona,* 971 F.Supp. 641 (D.P.R.1997). Plaintiffs, nonetheless, must make a fact-specific showing that a causal connection exists between the adverse treatment and their political affiliation. *Aviles–Martinez v. Monroig,* 963 F.2d 2, 5 (1st Cir.1992); *Correa–Martinez,* 903 F.2d at 58.

▮ Once plaintiffs establish their *prima facie* case, the burden shifts to defendants, who must establish that they would have taken the same action regardless of the plaintiffs' political beliefs, *see Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. 568, or that plaintiffs held a position for which party affiliation was a proper credential for continued employment. *Martinez Catala,* 971 F.Supp. at 648–49 (*citing Branti,* 445 U.S. at 518, 100 S.Ct. 1287); *De Choudens v. Government Dev. Bank of P.R.,* 801 F.2d 5, 8 (1st Cir.1986). If de-

fendants can show that they would have taken the same action regardless of the plaintiffs' political affiliation, plaintiffs' claim must fail. *See Padilla–Garcia,* 212 F.3d at 78.

▮ Plaintiffs claim they are members of the NPP, and that Rey is a member of the opposition party, the PDP. The fact that plaintiffs and defendants are of competing political persuasions may be probative of discriminatory animus. *See Acevedo–Diaz v. Aponte,* 1 F.3d 62, 69 (1st Cir.1993). This fact alone, however, is not sufficient for a finding of discriminatory motive. *Estrada–Izquierdo,* 850 F.2d at 15. "[M]erely juxtaposing the fact of one's [political affiliation] with an instance of discrimination is insufficient to state a claim." *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir. 1989).

Plaintiffs claim that Rey's sole motive in declaring null and void the personnel transactions was political discrimination and persecution. (Docket No. 1 at 12, 17, 19.) Aside from the claim of different political affiliations, however, the Complaint lacks sufficient facts to support a conclusion that Rey's sole aim in invalidating the personnel changes was to discriminate against plaintiffs.

For example, plaintiffs claim that Rey favored PDP activists when appointing employees, (Docket No. 1 at 19), but they do not specify who the appointed employees were, to what position were they appointed, or under what circumstances did he do so. Plaintiffs also claim that defendants were obsessed with persecuting anyone identified with the past NPP administration. (*Id.*) They, however, do not explain how exactly this persecution took place.

▮ To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must set

forth factual allegations regarding each material element necessary to sustain recovery. *Gooley,* 851 F.2d at 514. An essential element of any adverse employment action based on political affiliation under the First Amendment is the existence of the state actor's improper motive. *Crawford–El v. Britton,* 523 U.S. 574, 585, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). *See Rodriguez–Vazquez,* 160 F.Supp.2d 204, 209, n. 1. To comply with this heightened pleading standard, plaintiffs must allege specific facts which demonstrate that defendant's sole motive was to discriminate against them due to their political affiliation. *See Judge v. City of Lowell,* 160 F.3d 67, 72 (1st Cir.1998).

 An allegation of a politically charged atmosphere alone provides no basis for a reasonable inference that defendants' employment decisions about plaintiffs were tainted by their disregard of plaintiff's first amendment rights. *Correa–Martinez,* 903 F.2d at 58. Plaintiffs must make a "fact-specific showing that a causal connection exists linking defendants' conduct, as manifested in the adverse employment decision, to plaintiff's politics, that is, the plaintiff must have pled facts adequate to raise a plausible inference that he was subjected to discrimination based on his political affiliation or views." *Id.* Plaintiffs have presented no such facts here.

In sum, plaintiffs have failed to establish their *prima facie* case inasmuch as the Complaint does not meet the heightened pleading requirement established by the First Circuit in civil rights cases. *See City of Lowell,* 160 F.3d at 72 (holding that "a bare conclusory allegation of an intent to discriminate is insufficient; specific nonconclusory facts from which such an intent may reasonably be inferred is required.") As a result, the Court will dismiss the plaintiffs' First Amendment claim.

### C. *Due Process*

 The due process clause guarantees public employees with a property interest in continued employment and the right to a pre-termination hearing. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). For plaintiffs to have a due process claim, they must have a property interest in their positions. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The question of whether a person has a constitutionally protected property interest is answered by an independent, extra-constitutional source such as state law. *See, e.g., Correa–Martinez,* 903 F.2d 49, 53 (1st Cir.1990). Under Puerto Rico law, a career position is a constitutionally protected property interest. *Kauffman v. Puerto Rico Tel. Co.,* 841 F.2d 1169, 1173 (1st Cir.1988). That property right is void, however, if the employee acquired the career position through a violation of the Puerto Rico Personnel Act. *Id.*

Plaintiffs allege that their appointments fell within the statute's exceptions. (Docket No. 1 at 5.) They also claim that the government agency in charge of granting exceptions to the electoral prohibition, the Central Office for Advisement on Labor and Administration of Human Resources, also known as Central Office of Personnel Administration ("COPA"), has determined that the DE is exempt from the electoral prohibition. (Docket No. 1 at 3–5.) Furthermore, plaintiffs claim that, the tradition, usage and custom of past DE administrations has been to exempt the DE from the prohibition for the purpose of continuing the direct services to children and families and to avoid a loss of federal funds that are provided for these purposes. (Docket No. 1 at 5; Docket No. 27 at 21.)

The DE is not included within the statute's exceptions to the electoral prohibition. *See* 3 P.R. Laws Ann. § 1338.[4] Of the six exceptions stated in the corresponding regulation, exceptions (b), (e), and (f) can be deemed potentially applicable here. These exceptions are: (b) direct services to students in public schools; ... (e) programs and projects totally or partially financed with federal or external funds to the Government of Puerto Rico, if required by contract or by the provider of the funds and when the postponement of the personnel transaction could cause the program or project to fail, or cause a loss of funds; and (f) any other additional area that the Director of the COPA determines so. *See* P.R. Central Office of Personnel Administration Regulation 5460 (July 26, 1996) (translation provided.)

■ With respect to exception (b), aside from their previous general assertion, plaintiffs do not specify whether their positions affected direct services to students in public schools. Nor do plaintiffs allege facts showing that their positions were part of a program financed with federal or external funds, in which case exception (e) might apply. With regards to exception (f), plaintiffs claim that the COPA determined that their personnel transactions were exempt from the electoral prohibition. The Complaint, however, lacks facts that could support this assertion. Plaintiffs attached to their Motion in Opposition to Dismiss the Complaint (Docket No. 27) a letter from the COPA granting the former Secretary of Education's request to effectuate several personnel transactions during the prohibition because they were part of federal programs administered by the DE's External Human Resource Office. The COPA authorized only those transactions that could endanger the enumerated federal programs.

■ Under Rule 12(b) "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden." *Watterson v. Page,* 987 F.2d 1,2–3 (1st Cir.1993). *See Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001). Nevertheless, even if the Court were to consider the letter, plaintiffs have failed to provide facts showing that their positions fell within the scope of the authority granted in the letter. Plaintiffs have not even specified what their new positions were. Nor do they provide facts that show that their positions were part of federal programs administered by the DE's External Human Resource Office, or any other federal program for that matter.

■ In sum, plaintiffs fail to show that their personnel transactions fell under any of the above discussed exceptions. Consequently, and in accordance to the Puerto Rico Personnel Act, the Court agrees with the defendant in that the personnel transactions that took place during the prohibition were illegal. Accordingly, plaintiffs' due process claim must fail because they did not have a property right over their new positions. *See Kauffman,* 841 F.2d at 1173; *Zambrana Torres v. Gonzalez,* 71 F.Supp.2d 14, 21–22 (D.P.R.1999) ("Our determination that plaintiff's appointment is null and void as it was in violation of the pre-and post-electoral freeze mandates

---

**4.** Section 1338 states in relevant part:

The exceptions to the electoral prohibition include: the Legislative and Judicial Branch, employees of government agencies or instrumentalities operating as private enterprises of businesses, employees of government agencies or instrumentalities entitled to bargain collectively through special laws, the University of Puerto Rico, the Office of the Governor, and the Commonwealth Board of Elections.

that we DISMISS plaintiff's claim that she was discharged in violation of the Due Process Clause ..., as said claim cannot be sustained because she did not have a proprietary interest in the position.")

## CONCLUSION

In light of the foregoing, the Court GRANTS defendants' Motion to Dismiss (Docket No. 15) and DISMISSES plaintiffs' First and Fourteenth Amendment claims.

IT IS SO ORDERED.